## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DOUGLAS CHARLES BRIDGEFORD          *

Petitioner                          *

v                                   *          Civil Action No.  PJM-13-3708

                                    *

WARDEN J. MICHAEL STOUFFER, et al.
                                    *

Respondents
                                  ***

## MEMORANDUM OPINION


Douglas Charles Bridgeford ("Bridgeford"),[1] by his counsel, is petitioning for a Writ of

Habeas corpus pursuant to 28 U.S.C. § 2254.  Respondents, Warden Michael J. Stouffer,[2] and the

Attorney General of Maryland, by their counsel, have filed a Response, (ECF 6), to which

Bridgeford has filed an Opposition. (ECF 10).[3]

After considering the pleadings, exhibits, and applicable law, the court finds a hearing

unnecessary. *See* Local Rule 105.6 (D. Md. 2014); Rule 8, "Rules Governing Section 2254

Proceedings in the United States District Courts"; *see also Fisher v. Lee,* 215 F.3d 438, 455 (4th

---

[1]  Bridgeford testified at trial that his name is Charles, not Douglas. (ECF 6-1, p. 5).  Bridgeford has filed several cases in this court, unrelated to this proceeding, under the name Douglass Bridgeford. *See e.g.* PJM-15-1148, PJM-14-3404; PJM-14-2411; PJM-14-2410; PJM-13-2254; PJM-13-495.

[2]  Bridgeford is presently confined at the Maryland Correctional Institution- Hagerstown according to the Maryland inmate locator. *See* http://www.dpscs.state.md.us/inmate/search.do?searchType=detail&id=92480.    Richard D. Dovey is warden at that facility. *Id.*  Brian Frosh is Attorney General of the State of Maryland. *See* Fed. R. Civ. P. 25(d) (providing an action does not abate when a public officer who is a party in an official capacity ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party). The Clerk will be directed to amend the docket to substitute Warden Richard D. Dovey as Respondent in lieu Warden J. Michael Stouffer.

[3]  Bridgeford was granted thirty days to file a reply after receipt of Respondents' Answer. (ECF 3). Bridgeford was also provided an opportunity to address Respondents' assertions of procedural default. (ECF 7).

Cir. 2000) (observing there is no entitlement to a hearing under 28 U.S.C. § 2254(e)(2)). For reasons to follow, the Petition will be denied.

## BACKGROUND

Bridgeford is challenging his conviction in 2005, in the Circuit Court for Baltimore County, Maryland, for robbery, first-degree assault, burglary, and theft. On October 3, 2005, he was sentenced in the Circuit Court as a subsequent offender to 25 years without parole for robbery, 20 years concurrent for first-degree burglary, and 15 years concurrent for first-degree assault. The theft conviction was merged.

The Court of Special Appeals of Maryland summarized the facts of the case as follows:

On the evening of November 20, 2004, at her home at 15 Ruxlea Court in Baltimore County, Eleanor Millspaugh was assaulted by intruders who stole approximately $25,000 worth of jewelry from her. On the night of the incident, Millspaugh was in her home office, speaking on the phone to her stepson. Millspaugh saw a car pull up to the driveway, and she asked her housekeeper, Candie Stanley, to see who was in the car. Millspaugh remained on the phone until Stanley returned with two men who opened the door to the office. One of the men struck Millspaugh in the nose and asked, "[w]here's the money?" Millspaugh opened her purse and gave the man the $200 inside of it. The man then demanded to know where Millspaugh's safe was located. Millspaugh opened the desk drawer where she kept her keys, and picked up a key that she "was hoping was the correct key." She could not determine whether the key was the correct one because she was bleeding profusely from the wound in her nose and was disoriented.

Millspaugh led one of the men to the basement where she kept a cabinet with her valuables. Upon reaching the locked cabinet, the man told Millspaugh that if she did not open the cabinet, she would be killed. Millspaugh opened the door and told the man to take the jewelry and valuables inside. Millspaugh and the man by her side then went back upstairs into her bedroom to look for additional jewelry. When Millspaugh could not find any additional jewelry, the man struck her across the back of her head.

The intruder then ordered Millspaugh to go downstairs to the kitchen. At this point, Millspaugh had not seen either the other intruder or Stanley since the beginning of the incident, and Millspaugh did not know where they were. While in the kitchen, Millspaugh was told to lie down on the floor, face down. Millspaugh believed the other man then came into the kitchen and assisted the

2

first intruder in duct-taping Millspaugh's hands behind her back. Millspaugh waited several minutes until she heard the door slam, leading her to believe that the men had left the house. She then removed the duct tape from her hands, knelt down low, went out the back door of her house, and called the police from a neighbor's house.

Throughout the incident, the intruders wore surgical masks covering everything but their eyes and foreheads. Millspaugh was able to identify the men as African-American, and she noted that the men were not big and that they dressed reasonably well.

ECF 1, Ex. pp. 3-5.[4]

During the course of the police investigation, Candie Stanley identified Bridgeford as her

boyfriend, and implicated him in the robbery. (Ex 8, pp. 244-50). An arrest warrant was issued

for Bridgeford, and at the time of his arrest, he was found with jewelry later identified by

Millsbaugh as her jewelry taken during the robbery. (Ex. 15, pp. 3-10).

## PROCEDURAL HISTORY

Bridgeford, by his counsel, filed a direct appeal of his conviction in the Court of Special

Appeals of Maryland, raising thirteen claims, [5] three of which are pertinent to this federal habeas

petition:

1. Was trial held more than 180 days after counsel's entry of appearance in violation of Maryland rule 4-271;

2. Did the trial court err in finding a waiver of the right to counsel; and

3. Was due process violated when Bridgeford was tried in prison clothes.

(Ex. 15, pp. 3-10; Ex. 12).

On August 15, 2008, the Court of Special Appeals vacated the separate sentence for

first-degree assault on merger grounds, but otherwise affirmed judgment. (ECF 1, Ex. 15).

---

[4] All exhibits referenced were filed by Petitioner and are docketed at ECF 1, unless otherwise indicated.
[5] All thirteen claims are listed at ECF 1, pp. 2-3; Ex. 12; and Ex 15, n. 2.

On September 29, 2008, Bridgeford, by his counsel, filed a Petition for Writ of Certiorari in the Court of Appeals of Maryland, raising two questions for review. (ECF 1, Ex. 17).

1.  Where Petitioner's trial was held more than 180 days after counsel's entry of appearance in violation of Maryland Rule 4-271, and where the key postponement was made by the trial court under the purported authority of an express written *ad hoc* limited designation from the administrative judge, for the purposes of Petitioner's case only, did the Court of Special Appeals err in affirming Petitioner's conviction on the ground that Petitioner failed to prove that the trial judge was not in fact the administrative judge's designee for all purposes?

2.  Did the Court of Special Appeals fail to strictly enforce the express requirements of Maryland Rule 4-215 in affirming trial court's finding that Petitioner waived his right to counsel even though at least one of the required advisements was never given to Petitioner?

(Ex. 17).

With the Petition for Writ of Certiorari, Bridgeford's counsel filed a letter from the Honorable John Grason Turnbull, Circuit Administrative Judge and County Administrative Judge for Baltimore County, which addressed judicial authority for postponing cases in circuit court on the date Bridgeford's case was postponed. (Ex. 16).

Subsequently, Bridgeford filed another Petition for Writ of Certiorari, this one *pro se* but prepared with the assistance of his counsel, asking the Court of Appeals to review all his claims rejected on direct appeal. (Ex. 18). Among the additional questions presented for review was whether "due process was violated when Petitioner was tried in prison clothes?" *Id.*

On December 12, 2008, the Court of Appeals denied both Petitions for Writ of Certiorari. (ECF 1, p. 3). Bridgeford, proceeding *pro se*, filed a Petition for Writ of Certiorari to the Supreme Court of the United States on March 4, 2009, which was denied on October 5, 2009. *Id.*

On September 22, 2008, while the certiorari requests were pending in the Court of Appeals, Bridgeford filed a *pro se* Petition for Post-Conviction Relief in the Circuit Court for

Baltimore County, alleging *inter alia*: 1) his speedy trial rights were violated by the trial judge;
2) his "right to counsel Md. Rule 4-215" was violated; 3) he was forced to wear prison clothes at
trial. (Ex. 20).

On January 21, 2010, the circuit court held a post-conviction hearing at which Bridgeford
was represented by an assistant public defender from the Collateral Review Division, and both
Bridgeford and his appellate counsel testified. (Ex  21; ECF 6, Ex. 1).  After the hearing, the
court ordered additional briefing, observing "there were some issues raised today that were
obviously not raised in Mr. Bridgeford's pro se petition. And so—at least some of them—the
first time that [prosecutor] heard of them was this morning."  (ECF 6, Ex. 1, part 2, p. 101).

On February 18, 2010, Bridgeford, by his post-conviction counsel, filed a memorandum
presenting one question: " Did appellate counsel fail to provide effective counsel when he failed
to provide to the circuit court [sic] evidence of an improper assignment by the administrative
judge?" (ECF 22).  The state filed a Memorandum in response with affidavits obtained from
Judge Turnbull and Judge Kathleen Gallogly Cox addressing judicial designation for
postponement of trial. (Ex. 24).

On September 17, 2010, the post-conviction court issued an oral opinion and denied post-
conviction relief on all issues. (Ex. 26).  A transcript of that opinion was included in the written
order dated September 28, 2010. *Id.*

On October 27, 2010, Bridgeford filed an Application for Leave to Appeal the denial of
post-conviction relief. He raised three claims:

1.  The Circuit Court erred in ruling that Bridgeford was not deprived of his State
    and federal constitutional right to the assistance of counsel due to ineffective
    assistance of appellate counsel in failing to obtain and provide the Court of
    Special Appeals with written documentation of the improper procedure used

by the Circuit Court to postpone his trial past the *Hicks* [6] date in violation of *Goldring*.[7]

2. The Circuit Court erred in ruling Bridgeford was not deprived of his State and federal constitutional right to assistance of counsel due to the ineffective assistance of appellate counsel in failing to adequately brief, argue, and preserve the issue that Bridgeford was not informed by the trial court of the possible mandatory penalties as required by Md. Rule 4-215 and *State v. Camper*.[8]

3. The Circuit Court erred in failing to consider the fact that the docket entries show that Bridgeford's trial was improperly postponed past the *Hicks* date to August 2, 2005 by the court clerk's office on June 15, 2005, and not by the Administrative Judge's designee on June 16, 2005

(Ex. 1, Ex. 27). In responding to the Order to Show Cause issued by the Court of Special Appeals, the State filed a response to the Application for Leave to Appeal, and asserted Bridgeford had waived the third claim. (Ex. 28).  On December 6, 2012, the Court of Special Appeals issued an unreported opinion summarily denying leave to appeal. (Ex. 30).

On January 11, 2013, Bridgeford filed a Motion to Reopen his post-conviction proceedings. He alleged post-conviction counsel was ineffective for failing to raise properly an allegation that Md. Rule 4-215 was violated and his sentence is illegal. (ECF 6, Ex. 2).  The Motion was denied on January 14, 2013, and Bridgeford did not file an Application for Leave to Appeal this ruling. (ECF 6, Ex. 3)

## DISCUSSION

Bridgeford the following grounds for relief:

(1) His appellate counsel rendered ineffective assistance by failing to obtain and

---

[6] *State v. Hicks*, 285 Md. 310 (1979) (stating under Maryland law, a defendant must be brought to trial within 180days).

[7] *Goldring v. State*, 358 Md. 490 (2000) (holding charges were properly dismissed where a circuit court judge, not the administrative judge or his or her designee improperly postponed trial).

[8] *State v. Camper*, 415 Md. 44 (2010) (holding it is error for the trial court not to inform the defendant of the penalties to which he may be subject as a subsequent offender and failure to inform defendant of such mandatory penalties is reversible error).

6

present evidence to the Court of Special Appeals that another judge had been appointed with Judge Ballou-Watts to hear postponement requests;

(2) His appellate counsel rendered ineffective assistance by failing to adequately brief, argue, and preserve the issue that Bridgeford was not informed by the trial court of the possible mandatory penalties he faced;

(3) His right to due process was violated when he was afforded no reasonable alternative to being tried in identifiable prison clothing.

(ECF 1, pp. 17-28).

## I.    STANDARD OF REVIEW

An application for writ of habeas corpus may be granted only for violations of the

Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a).  Section 2254(d)

provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States: or
>
> (2) resulted in a decision  that was based on a unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. 2254(d).  The statute sets forth a "highly deferential standard for evaluating state-court

rulings, *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997), and is "difficult to meet," *Cullen v.*

*Pinholster*, 563 U. S. __, __, 131 S. Ct. 1388, 1398 (2011).

A state adjudication is contrary to clearly established federal law under ¶ 2254(d)(1)

where the state court "arrives at a conclusion opposite to that reached by the [Supreme] Court on

a question of law" or "confronts facts that are materially indistinguishable from a relevant

Supreme Court precedent and arrives at a result opposite to [the Supreme] Court." *Williams v.*

*Taylor*, 529 U.S. 362, 405 (2000).  Under the "unreasonable application analysis" under

7

2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. __, __, 131 S.Ct. 770, 786 (2011)(quoting *Yarborough.v Alvarado*, 541 U.S. 652, 664 (2004)).   Thus, "an unreasonable application of federal law is different from an incorrect application of federal law.   *Id.* at 785 (internal quotation marks omitted).

Under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).   "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," *id.*, a federal court may not conclude that the state court decision was based on an unreasonable determination of the facts, *id.*   "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1).   "The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*   "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part."   *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010).   This is especially true where the state court has "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* at 379.   Bridgeford's claims will be examined under this framework.

8

When a petitioner alleges a claim of ineffective assistance of counsel, he must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Representation is deficient if it falls below an objective standard of reasonableness, considering all the circumstances. *Id.* at 688.

To satisfy the first part of this standard, it must be demonstrated that counsel's performance was not "within the range of competence normally demanded of attorneys in criminal cases." *Id.* at 687. The standard for assessing such competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id.* at 669. A federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. A petitioner must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 at 689). "There is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." *Harrington*, 562 U.S. at 109 (citations omitted) (internal quotation marks omitted). "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* at 105 (citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

The second part of the standard requires the Court to consider whether counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable and that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 690-94. "The benchmark of an ineffective assistance claim must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Id*. at 686. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. A determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted had the attorney been deficient. *See id.* at 697.

## II.  BRIDGEFORD'S CLAIMS

### A.  Ineffective Assistance of Appellate Counsel

#### 1.  Ineffective assistance for failing to obtain and present evidence to the Court of Special Appeals that another judge had been appointed with Judge Ballou-Watts to hear postponement requests

This claim faults Bridgeford's appellate counsel for failing to adequately pursue a claim premised on a matter of state law. Specifically, Bridgeford argues his trial was postponed in violation of Md. Rule 4-271 and contrary to the rule announced by the Court of Appeals of Maryland in *State v. Hicks*, 285 Md. 310 (1979).

As explained by the Court of Special Appeals in its decision on direct appeal, Maryland Rule 4-271 (a)(l) maintains that the trial date "shall be set within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the circuit court pursuant to Rule 4-213, and shall not be later than 180 days after the earlier of those events." (Ex 15, p. 12).

10

The Rule provides that "[o]n motion of a party, or on the court's initiative, and for good cause shown, the county administrative judge or that judge's designee may grant a change of a circuit court trial date." *Id.* If the trial date is changed, "any subsequent changes of the trial date may be made only by the county administrative judge or that judge's designee for good cause shown." *Id.*

In *State v. Hicks*, 285 Md. at 318 (1979), the Court of Appeals ruled that the statutory requirement for prompt trial of criminal cases is "binding upon the prosecution and defense alike; they are not mere guides or bench marks to be observed, if convenient." *Id.* at 318. Citing *Goldring v. State*, 358 Md. 490, 505 (2000), the Court stated that it is inappropriate for an administrative judge to appoint all of the circuit court judges as the administrative judge's designees to rule on postponements in the circuit court judges' individual cases. The appropriate remedy for a violation of Rule 4-271(a) is dismissal of charges. (Ex 15, pp. 11-12).

Bridgeford's trial counsel entered an appearance on December 29, 2004. (Ex. 6, p. 6). Therefore, Maryland law required Bridgeford's trial to begin before June 28 2005, unless postponed for good cause by the county administrative judge or his designee. *See* Md. Rule 471; *Hicks*, 285 Md. at 310.  The validity of the Judge Ballou- Watts' ruling on June 16, 2005 depended upon whether she had been properly appointed by Judge Turnbull as his designee to rule upon that postponement request.

On direct appeal, Bridgeford argued that Judge Turnbull improperly designated Judge Ballou-Watts to rule on the postponement, asserting the practice of specific *ad hoc* designations was disapproved in *Goldring.*

The Court of Special Appeals rejected Bridgeford's claim, stating:

> On June 16, 2005, during the second day of motions hearings, Bridgeford requested a postponement. Bridgeford claimed that he needed additional time to procure counsel. Judge Ballou-Watts noted that "I don't get to make that ruling, in any event. It would have to go before Judge Turnbull... or his designee, if he's

11

not here." Accordingly, Judge Ballou-Watts sent the parties to Judge Turnbull to decide Bridgeford's motion for a postponement. Judge Turnbull denied Bridgeford's motion. Not long thereafter, Bridgeford collapsed in his cell, and had to be taken to St. Joseph's Hospital. Coincidentally, when Bridgeford had been very upset with Judge Ballou-Watts the day before, Bridgeford had told the Judge that "he would not be returning because he would be in the hospital." [9] In any event, Judge Ballou-Watts adjourned the proceedings until she received further notice of Bridgeford's condition. When the proceedings resumed, with Bridgeford present, Judge Ballou-Watts stated that Judge Turnbull had designated her to serve as the Acting Administrative Judge for purposes of any postponement request in his case that afternoon. A memorandum from Judge Turnbull to Judge Ballou-Watts sent that day reads:

> IT IS HEREBY ORDERED, this 16th day of June, 2005, that you are hereby appointed to rule on the request for postponement in the case of *State vs. Douglass* [sic] Charles Bridgford [sic], case number 04 CR4654, on Thursday, June 16, 2005.

The State then requested a postponement because, although the State had been willing and able to begin trial on June 16, the delay caused by Bridgeford's illness interfered with the State's witnesses' schedules. Judge Ballou-Watts noted that Bridgeford "actually got what [he] requested after all." When Judge Ballou-Watts twice asked if Bridgeford wanted to be heard on the postponement issue, Bridgeford shook his head "no." Accordingly, Judge Ballou-Watts granted the postponement and charged it to Bridgeford because of "his purposeful actions after the Administrative Judge denied his request earlier."

Ex. 16, pp. 11-13.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

We find that the circuit court did not violate Maryland Rule 4-271 with these procedures. *Goldring* forbids situations in which the county administrative judge designates all of the circuit court judges in a particular county to serve as the designee of the administrative judge for purposes of ruling on postponements in the judges' individual cases. *See* 358 Md. at 4. Nothing in *Goldring* explicitly prevents a circuit court judge from ruling on postponements in her own case if he or she is the single designee of the administrative judge. In the instant case, there is nothing in the record to suggest that Judge Turnbull had designated any other circuit court judge, other than Judge Ballou-Watts, to serve as acting administrative judge. Instead, Judge Ballou-Watts stated that "Judge Turnbull has designated me to serve as the Acting Administrative Judge for purposes of any postponement request this afternoon." (emphasis added) This language

---

[9] The transcript shows that on June 15, 2005, Judge Ballou-Watts told Bridgeford she would see him the next morning, and Bridgeford responded "Who? Be in the hospital." (Ex. 5, p. 211). On June 16, as trial was set to begin, Bridgeford was found by the Sheriff on the floor of his cell and taken to the hospital. (Ex. 5).

suggests that Judge Turnbull properly designated Judge Ballou-Watts as the sole
administrative judge, and appellant provides no evidence to the contrary.

*Id.* at. 14.

In sum, the Court of Special Appeals determined Judge Ballou-Watts did not abuse her
discretion in granting postponement, a matter firmly committed to court discretion. Because
*Bridgeford*'s hospitalization delayed the start of trial and disrupted the State witnesses' schedules
and ability to attend trial, the Circuit Court chose the next available date that accommodated both
the court's calendar and witness schedules. The Court of Special Appeals noted that "[i]n any
event, Bridgeford himself had sought a postponement earlier that very day. Under these
circumstances, the circuit court had sufficient reason and good cause to postpone the trial." *Id.*

At the post-conviction hearing, Bridgeford's appellate counsel, David Kennedy, testified
that after the Court of Special Appeals issued its decision, he submitted a  Public Information
Act request for documents showing who was designated to consider postponements on that date.
Kennedy received a letter in response from Judge Turnbull which stated that Judge Turnbull
"handled all postponements on June 16th, except for two Defendants, one of which was heard by
Judge [Kathleen] Cox as my designee and one by  Ballou-Watts, again as my designee. (ECF 6,
Ex 6, Part 2, p. 73).  The letter continued  "If you will be more specific as to which Defendant
you are representing, I'll be happy to advise as to which Judge handled the postponement, and if
it was not me, I will forward to you a copy of my order designating that Judge."  *Id.*

Kennedy testified before the post-conviction court that had he known there were two
judges designated on that date, he would have included this information on direct appeal.  He
explained he had been "operating on the premise" that Judge Turnbull's original memo of
designation for the June 16th designation was sufficient to make a *Hicks* argument.  *Id.* at 74.
Kennedy recalled he had inquired in the Clerk's Office about the designation, and although

13

directed to Judge Turnbull's chambers, he did not make pursue further investigation. *Id.* at 79-80. Kennedy testified that he attached Judge Turnbull's letter to the Petition for Writ of Certiorari. (*Id.*; *see also* ECF 1, Ex. 14).

Kennedy surmised that obtaining the letter earlier would have helped his client by improving the record before the Court of Special Appeals. (Ex. 6, Part 2, p. 82). He testified:

> And I tried to argue that the State and the Court of Special Appeals were misinterpreting the facts and the original designation. I should have been diligent about following up and documenting who was and who was not the designee on the 16th in ruling on Mr. Bridgeford's--- ruling on the postponement in Mr. Bridgeford's case. And I have no excuse for it. It was an—it was just I didn't want to do it. I didn't want to go to Judge Turnbull's chambers that day and I left the courthouse without doing it. So that, that the—what I think was my ineffective assistance on the first issue.

*Id.* Nevertheless, he conceded, " I don't--- I can't say what the outcome would have been. That's not for me to say, but I certainly would rather have had this than not." *Id.*

After the hearing, Bridgeford's post-conviction counsel filed a memorandum posing whether "appellate counsel fail to provide effective counsel when he failed to provide the circuit court [sic] evidence of an improper assignment by the administrative judge," and asserting that because an "improper assignment" had occurred on June 16, 2005, appellate counsel should have obtained the letter from Judge Turnbull which he attached to the Petition for Writ of Certiorari in time to present it to the Court of Special Appeals. (Ex. 22).

Bridgeford argued he was prejudiced by appellate counsel's performance because had Judge Turnbull's letter been presented to the Court of Special Appeals, the Court "could not have made the same ruling." *Id.* at 6. He argued the Court of Special Appeals "could not have speculated as to whether Judge Ballou-Watts was the designee for the entire day." *Id.* "Instead, the Court of Special Appeals would have decided if designating two separate judges for two

separate postponements on June 16, 2005 violated the ruling in *Goldring*.  Judge Turnbull's letter would have bolstered the Petitioner's argument that the designation was improper." *Id.*

The memorandum reasons the Court would have "clarified *Goldring* by including this set of facts, or rejected these facts as falling beyond the scope of *Goldring*.  Instead the court was able to dismiss the issue by speculating that Judge Ballou-Watts was designee for the entire day, a fact that has since been shown to be false." *Id.*

The State responded in a post-hearing Memorandum, supported by affidavits executed by Judge Turnbull and Judge Cox. (ECF 24).[10]   Judge Turnbull's affidavit states that on the morning of June 16, 2005, he was presiding over a criminal docket, and denied a postponement request by the defendant in *State vs. Douglass Charles Bridgeford*.  Judge Turnbull attests he specially assigned the *Bridgeford* case to Judge Ballou-Watts on or about June 5, 2005. (ECF 24).  Judge Turnbull attests:

> My docket had concluded but Judge Cox was assigned to hear cases on the second criminal docket. I designated Judge Kathleen Cox as my designee to preside over the postponement request in the case of *State vs. Shawn Francis,* case number 05 CR 0255, on Thursday, June 16, 2005.  Once the case was concluded her designation as Administrative Judge was terminated and the responsibilities of Administrative Judge returned to me.

> Later in the afternoon, Judge Vicki Ballou-Watts was designated to preside over the request for postponement in the case of *State vs. Douglass Charles Bridgeford*, case number 04 CR 4654, on Thursday June 16, 2005. Once the case was concluded her designation as Administrative Judge was terminated and the responsibilities of Administrative Judge returned to me.

(Ex. 24, p. 169).

The affidavit executed by Judge Cox states:

> On June 16, 2005 I was the presiding judge over one of the two criminal dockets scheduled in the Baltimore County Circuit Court. That morning I heard

---

[10]  Respondents note Bridgeford raised no objection to the additional materials. (ECF 6, p. 15). Bridgeford, however, later questioned submission of the affidavits in his Application for Leave to Appeal the Denial of Post-Conviction Relief. (Ex. 26),

several bench warrant hearings, pleas and one motion to suppress that was litigated. The docket was relatively short. At the end of my docket there was one final case of *State v. Shawn Francis* and the parties were negotiating a plea. They requested a brief postponement to allow counsel to resolve a pending violation of probation.

I was not the designated Administrative Judge for June 16, 2005. It is my usual practice to check with the chambers of the Administrative Judge if a postponement request comes off my docket at a time when the judge may not be available. My chambers notified Judge Turnbull's chambers to advise him of the postponement request. I was designated Administrative Judge for the one case of Shawn Francis case number, 05 CR 0255. I postponed the case and my designation as Administrative Judge terminated.

(Ex. 24, p. 168).

On September 1, 2010, Bridgeford's post-conviction counsel submitted a letter to the court, which read:

At the request of Mr. Bridgeford, I am enclosing a copy of a recent opinion issued by the Maryland Court of Appeals in the case of *Camper v. State* (998 A.2d 352, 2010). Mr. Bridgeford has asked that the case be considered in making your decision. I have advised Mr. Bridgeford that I would forward the case to you but given the timing, it may be necessary for him to file a motion to re-open the post-conviction in the future.

(Ex. 25).

The post-conviction court conducted another hearing on September 17, 2010. (Ex. 26). At the hearing, the court indicated familiarity with *Camper*, and ruled from the bench as follows:

The issue of the designation regarding postponements is really a non issue. There was no impropriety. As the affidavits and the time line make clear, Judge Turnbull is the Administrative Judge of this Court. He was the Administrative Judge on the morning of the 16th. He ruled on a number of postponements, including Mr. Bridgeford's initial request. But after Mr. Bridgeford's collapse in the holding cell, and his subsequent examination at the hospital and his return to this Court, by that time when the State requested the postponement, Judge Turnbull was no longer available, and he designated Judge Ballou-Watts as Administrative Judge to rule on the postponement, which she did.

> There is nothing improper about that, and there is nothing, Mr. Bridgeford, sir, that runs afoul of the *Goldring* case. In *Goldring*, which is 358 Md. 490, it is a 2000 case, the allegation was that the postponement was improperly granted because the trial Judge who granted it had been improperly designated by the County Administrative Judge to hear postponements, and so was not authorized to grant the request.

> In fact, in that case the County Administrative Judge designated all the other Judges on that Court to hear the postponement requests, and that was found to be improper. Postponements that cause the scheduling of a criminal trial beyond the hundred and eighty day period must be granted by the County Administrative Judge or his designee and must be supported by good cause.

> In this particular case, Judge Turnbull designated Judge Ballou-Watts, who heard this particular request for postponement. She found good cause and granted the request. There is nothing more to it. Appellate counsel, had he inquired further, would not have uncovered any impropriety. There was no prejudice to Mr. Bridgeford.

(Ex 26, pp. 14-15).

A federal court may review a state prisoner's habeas petition only on the grounds that the challenged confinement violates the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Thus, a federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). In this case, Bridgeford's claim is premised wholly on a question state law. The state court's determination that the postponement granted by the trial court comports with Maryland law forecloses relief as to this claim.[11]

To the extent Bridgeford complains appellate counsel rendered ineffective assistance, the post-conviction court's determination that Judge Ballou-Watts was the single designee of the administrative judge at the time she granted the postponement in Bridgeford's case is amply

---

[11] Bridgeford neither alleges his Sixth Amendment right to a speedy trial under was violated nor evidence prejudice as a result of the postponement of his trial. *See Barker v. Wingo*, 407 U.S. 514, 532 (1972) (In order to determine if petitioner's Sixth Amendment right to a speedy trial was violated, four factors must be considered: to be considered are the length of the delay, the reason for the delay, the timeliness of the assertion of the right, and the actual prejudice suffered as a result of the delay.).

supported in the record. (Ex. 26). Additional briefing during post-conviction proceedings demonstrated to the state court's satisfaction that the postponement designation complied with Rule 4-271 and *Goldring*. Counsel cannot be faulted for failing to pursue a claim lacking factual merit which would not have changed the outcome of the appeal.

While appellate counsel and Bridgeford may have been disappointed in the outcome of direct appeal, appellate counsel's decision not to pursue further investigation of one claim, especially in light of the other twelve presented,[12] does not amount to performance outside the range of reasonable professional assistance. A "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstance of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 690.

Bridgeford's suggestion that further investigation by appellate counsel might have changed the outcome of the appeal is speculative at most, and falls far short of demonstrating prejudice. It has not been shown that but for appellate counsel's alleged errors there was a reasonable probability the results would have been different. *See Strickland*, 466 U.S. at 690-94. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. In this regard, appellate counsel, who valiantly attempted to fault the representation he provided, conceded at post-conviction hearing that he could not "say what the outcome [of the Court of Special Appeals' ruling] would have been." Ex. 6, Part 2, p. 82.[13]

Considering this claim through the highly deferential lens of habeas review, this Court finds that Bridgeford fails to meet his burden to demonstrate ineffective assistance. *Smith v. North Carolina*, 528 F.2d 807, 809 (4th Cir. 1975) [Petitioner bears the burden of proving his

---

[12]   *See supra* note 5.
[13]   Respondents aver, the "less clear picture developed by appellate counsel gave Bridgeford a much better chance of success on direct appeal with respect as to this claim." (ECF 6, p. 31).

allegations when seeking a writ of habeas corpus] Bridgeford does not show the ruling of the state court was contrary to clearly established federal law or was based on an unreasonable determination facts in light of the evidence presented to the State Court, and this claim provides no grounds for federal habeas relief.

> **2. Appellate counsel rendered ineffective assistance by failing to adequately brief, argue, and preserve the issue that Bridgeford was not informed by the trial court of the possible mandatory penalties that he faced**

Bridgeford next claims his appellate counsel was ineffective for failing to adequately litigate on appeal that his waiver of trial counsel was defective under Maryland Rule 4-215.[14] He asserts the post-conviction judge "did not address the issue regarding the trial court's failure to advise Bridgeford of the mandatory minimum sentences that he faced. Therefore, no deference need be shown to her ruling in that regard" and this issue should be reviewed *de novo*. (ECF 1, pp. 23-24). Respondents counter this claim is procedurally defaulted because it was not raised during post-conviction proceedings before the Circuit Court for Baltimore County. (Ex. 20-26).

During the post-conviction hearing, there was testimony concerning whether appellate counsel should have done more regarding the speedy trial issue and Md. Rule 4-215 on appeal. (ECF 6, Ex. 1). Because neither this claim nor a claim of ineffective assistance of appellate counsel were raised in the post-conviction petition, the post-conviction court ordered additional briefing. As noted earlier, Bridgeford's post-conviction counsel argued one issue in the post-conviction hearing memorandum: "Did appellate counsel fail to provide effective counsel when

---

[14] At a pre-trial proceeding on June 6, 2005, Bridgeford's oral motion to discharge his attorney was granted. (Ex. 2. p. 8). The Court advised Bridgeford that he was facing serious charges and suggested he obtain other counsel. During arraignment on June 9, 2005, Judge Ballou- Watts discussed the requirements of Md. Rule 4-215. (Ex. 3). Judge Ballou-Watts advised Bridgeford as to the maximum penalties he faced with respect to each count. but not as to the applicable mandatory minimum penalties if convicted. The State's Attorney advised Bridgeford as to the mandatory minimum sentences that he might face if convicted. (Ex. 3, p. 17). Bridgeford also indicated that he understood he was facing a 25 year sentence without parole. (Ex. 3, p. 12; Ex 8, p. 7).

he failed to provide the Circuit Court [sic] evidence of an improper assignment by the administrative judge?" (Ex. 22).

On or about September 1, 2010, Bridgeford's post-conviction counsel submitted a letter to the court, which read:

> At the request of Mr. Bridgeford, I am enclosing a copy of a recent opinion issued by the Maryland Court of Appeals in the case of *Camper v. State* (998 A.2d 352, 2010). Mr. Bridgeford has asked that the case be considered in making your decision. I have advised Mr. Bridgeford that I would forward the case to you but given the timing, it may be necessary for him to file a motion to re-open the post-conviction in the future.

(Ex. 25).

The Circuit Court subsequently denied post-conviction relief, after indicating its familiarity with *Camper*. (Ex. 26). In his Motion to Reopen Post-Conviction proceedings, Bridgeford acknowledged that Rule 4-215 was not presented in his initial post-conviction petition. (ECF 6, Ex. 2, p 2) (stating post-conviction counsel "should have and did not raise issues before the post-conviction court; this was a factor for defense pertinent to Petitioner's case" and citing Md. Rule 4-215 and *Camper*). Given these facts, the claim is procedurally defaulted.

Even were it not procedurally barred, this claim provides no grounds for habeas relief. As stated by the post-conviction court:

> The last thing that Mr. Bridgeford mentioned at the hearing that he was unhappy with appellate counsel because he felt the gentleman had been ineffective and that was based, frankly, on the fact that the Court of Appeals had denied cert. I find no merit to that as well.
>
> I did receive after the argument and after I had already given everyone additional time to present submissions, I received a letter from counsel for Mr. Bridgeford, who indicated his client wanted me to have a copy of the *Camper* case. I did receive it and I'm familiar with the case.

(Ex. 26, 15-16, 18-19)

Insofar as it might be argued that Bridgeford presented this claim to the post-conviction court, it was premised wholly on a state court interpretation of a state statute. *See Estelle,* 502 U.S. at 67-75 (stating federal habeas relief is unavailable for errors of state law). Of import here, Bridgeford does not claim that the briefs filed in the Court of Special Appeals were inconsistent with prevailing law at the time. Respondents note that not only had the Court of Appeals yet to rule that notice of mandatory penalties by the trial court was required under Rule 4-215, but the Court of Special Appeals had rejected the claim in *Knox v. State*, 173 Md. App. 246 (2007). (ECF 6, p. 37). Counsel's failure to predict a rule of law yet to be announced does not constitute deficient legal representation. *See United States v. Dyess,* 730 F.3d 354, 363, cert. denied, _ U.S. _, 135 S.Ct. 47, 190 L.Ed.2d 52 (2014) (quoting *United States v. McNamara*, 74 F.3d 514, 516 (4th Cir. 1996); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1360 (4th Cir. 1995). As counsel cannot be held deficient in this regard, the post-conviction court's ruling was reasonable and provides no grounds for federal habeas relief.

Even so, appellate counsel included a footnote in the brief stating: "Judge Ballou-Watts also failed to expressly and directly advise Bridgeford that he was facing a possible mandatory penalty of 25 years without parole." (ECF 1, Ex 12, n. 5). Further, counsel argued in the Petition for a Writ of Certiorari:

> This Court reinforced the important purpose and mandatory nature of Rule 4-215 in *Knox v. State,* 404 Md. 76, 87, 945 A.2d 638,645 (2008), finding that the Rule was not complied with where the defendant was not advised of possible mandatory or enhanced penalties. This Court reiterated that the rule protects a defendant's constitutional right to counsel and that the requirements of the rule are mandatory.
> ********************************************
> In the present case, Petitioner sought to discharge or waive counsel, and appeared without counsel on several occasions where trial was to be conducted on a subsequent date. Yet Petitioner was never advised as required by Rule 4-215 (a)(5) that he would be required to be tried unrepresented if he appeared for trial penalty he faced, as required by Rule 4-215(a)(3). Because Bridgeford was tried

without counsel and never validly waived his right to counsel under Rule 4-215,
his convictions should have been reversed.

(Ex. 17, pp. 15-16). In fact, appellate counsel raised this issue on direct appeal, and later pursued

the issue in the Petition for Certiorari.

"Surmounting *Strickland's* high bar is never an easy task.... [T]he standard for judging

counsel's representation is a most deferential one." *Harrington*, 562 U.S. at 105 (2011) (internal

quotation marks omitted). Under these circumstances, Bridgeford has not sustained his burden to

show counsel's performance fell below an objective standard of reasonableness, and a reasonable

probability exists that but for this counsel's error, the result of the proceeding would have been

different. To the extent this claim was not procedurally defaulted, the decision of the post-

conviction court was reasonable under *Strickland's* deferential standard of review, and will not

be disturbed.

### B. DUE PROCESS CLAIM

Bridgeford's last claim is that his right to due process was abridged when he was tried in

court wearing identifiable prison clothing. The Court of Special Appeals rejected the claim on

direct appeal, stating:

> Bridgeford contends that the circuit court violated his right to due process
> when the circuit court tried him while he wore a "DOC" shirt. The court cannot
> compel an accused to appear for a jury trial in prison clothes because of concerns
> that the jury would render a conviction based solely on the accused's appearance.
> *See Estelle v. Williams*, 425 U.S. 501, 512 (1976); *Knott v. State*, 349 Md. 277,
> 286 (1998).
>
> In the instant case, the issue of Bridgeford's attire first arose at the motion
> hearing on June 15, 2005, when the State broached the issue with the court. The
> circuit court suggested to Bridgeford that he have a family member loan him
> something to wear or that he turn his shirt inside out so that the "DOC" logo
> would not be visible. The issue arose again during the first day of trial. Bridgeford
> expressed concern that, even if he turned his DOC shirt inside out, the jurors still
> could see the DOC logo. The court replied that, when turned inside out, the logo
> was "not that visible." The court asked if Bridgeford would prefer to wear the t-

shirt that he had on underneath the DOC shirt, but Bridgeford declined because then the jury could see the tattoos on his arm. The issue arose a third time during the second day of trial on August 4, 2005. When the prosecutor again broached the subject, the court ordered Bridgeford to turn his shirt inside out. Bridgeford responded that "I got clothes here. I'm trying to change clothes that was brought to me from my family members." The court explained that it had established a rule that if the clothes had been brought before the last juror arrived, the court would have allowed Bridgeford to wear them, but that the clothes had not arrived in time. Bridgeford requested a postponement so that he could change into "proper clothing" because he did not want the jury to see him in the clothing he was wearing. The court repeated its offer that Bridgeford could remove his DOC shirt to wear the t-shirt underneath his DOC uniform, but Bridgeford again rejected this option because he did not want the jury to see the tattoos that he has on his arm. The court left Bridgeford with two options: either turn the DOC shirt out or take it off and wear the t-shirt underneath.

We hold that the circuit court did not violate Bridgeford's due process rights by taking the above steps. *Knott* held that the trial court "should have undertaken some effort to permit the appellant to sit before the jury in clothing that did not give the aura of 'prisoner.'" 349 Md. at 285 (quoting this Court's opinion in the same case). In the instant case, the circuit court took two such efforts. First, the court allowed Bridgeford's family members to bring street clothes to him, provided that the family arrived before the last juror. The court imposed this condition so as not to delay the trial indefinitely while waiting for Bridgeford's clothes to arrive. Even when the clothes did not arrive on time, the court still provided Bridgeford the opportunity to change into the clothes during a lunch recess. The second option that the circuit court offered was for Bridgeford to remove his DOC shirt, revealing a t-shirt underneath. Bridgeford rejected this option not because the remaining t-shirt was prison garb, but because he did not want to display the tattoos on his forearms to the jury. While this may or may not have been a legitimate concern, the circuit court's offer of various options to Bridgeford satisfied the requirements of *Knott* and *Williams*. Those cases hold that a trial court cannot compel a defendant to stand trial in prison clothing. In no way did the circuit court in this case compel Bridgeford to stand trial in his DOC shirt. *Cf. United States v. Henry*, 47 F.3d 17, 22 (2d Cir. 1994) (finding no "compulsion" because the trial court did not affirmatively prevent the defendant from wearing civilian clothing, but simply refused to excuse the defendant's failure to make proper arrangements after receiving ample notice and opportunity). Because the circuit court provided Bridgeford with several other options which he declined to accept, we hold that the circuit court did not violate Bridgeford's due process rights in regards to the clothing that Bridgeford wore during trial.

(Ex. 15, pp. 20-22 ).

"The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment. The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *Estelle v. Williams*, 425 U.S. 501, 503 (1976). In *Estelle*, the Supreme Court held that due process was compromised by "the constant reminder of the accused's condition implicit in such distinctive, identifiable attire." *Id.* at 504–05. "[A]n accused should not be compelled to go to trial in prison or jail clothing because of the possible impairment of the presumption [of innocence] so basic to the adversary system." *Id.* at 504.

In this case, Bridgeford has not presented the kind of "constant reminder" addressed in *Estelle* that would have rendered his trial fundamentally unfair.   Here, Bridgeford was provided advance notice and an opportunity to obtain civilian clothes. He was also given the option of wearing his undershirt, which he declined, or reversing his DOC shirt.  (Ex 7, pp. 25-27;  Ex. 8, pp 2-6; *see also* ECF 6, Ex. 4).  The record clearly shows the court did not compel Bridgeford to wear his prison uniform; it merely refused to delay trial after the last juror arrived.  At the lunch recess, he changed his clothes. (Ex. 8, p. 5).  Thus, Bridgeford cannot show the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S.Ct. at 786–87.  Further, he has failed to present clear and convincing evidence necessary to overcome the presumption of correctness accorded to factual findings made by the state court. 28 U.S.C. 2254 (e)(1); *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007); *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010).

On collateral review of a state court conviction, federal courts will only grant relief if an alleged error had a "substantial and injurious effect or influence in determining the jury's

verdict." *Fry v. Pliler*, 551 U.S. 112, 121–22 (2007) (citing *Brecht v. Abrahamson*, 507 U.S. 619 (1993)).  The record here indicates the lettering "DOC" was printed only on the back of Bridgeford's shirt, and it was rendered inconspicuous when the shirt was turned inside out. Although the lettering was apparently still discernable (Ex. 7, p. 40,  Ex. 8, pp. 5-8) when the shirt was reversed, there is no evidence that members of the jury saw the letters or understood what they meant. To be sure, the record does not indicate that Bridgeford was otherwise wearing a prison uniform or obviously dressed in prison attire. Based on these facts and under the deferential standard  accorded to the state court's decision on federal habeas review, the state court determination will not be disturbed.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the Court is required to issue or deny a Certificate of Appealability (COA) when it enters a final order adverse to the applicant. The Petition provides no basis for issuance of a COA.

"A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The petitioner " 'must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong,' " *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.' " *Miller–El v. Cockrell*, 537 U.S. 322, 335–36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)); *see also Rose v. Lee*, 252 F.3d 676, 683–84 (4th Cir. 2001). Bridgeford has raised no arguments which cause this Court to view the issues as

debatable, find that the issues could have been resolved differently, or conclude that the issues raise questions which warrant further review.  Therefore, a COA shall not issue.

## CONCLUSION

For reasons stated herein, the Court will deny the Petition and decline to issue a COA.  A separate Order follows.

_6/8/15_
Date

_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

26